[Crim. No. 8699. Second Dist., Div. One. July 29, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. FRANKLIN ANDREW MARSH, Defendant and Appellant.

§

H. Clay Jacke for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—In a nonjury trial defendant was convicted of assault with a deadly weapon, a felony. He appeals from the judgment.

Appellant asserts that the evidence is insufficient to support the judgment.

On April 28, 1962, about 7 p.m., while James Hill was in a café, the defendant came to him and said that he wanted some money, and that he would give it back. Hill gave him $2.00. Then defendant took a roll of money from his pocket and said, "I really didn't need it, but I just wanted to get some of yours." Hill asked defendant to return his money. Defendant, after saying that he was going to get some change, went into a market which was about 100 feet from the café. Hill went to the market and waited outside for defendant to return. Hill testified that when defendant came out of the market he asked defendant for the money, and

then defendant hit him in the face with something and they started to fight; while they were fighting, the defendant cut him 10 times—he was cut on his chest, face, arm, and leg; the cuts were deep, his nose and lip were ''cut completely through,'' and 200 stitches were required; Melvin Hill, the brother of the victim, stopped the fighting; James Hill (victim) did not see a weapon at any time, and did not have a weapon with him.

The testimony of Melvin Hill was substantially the same as the testimony of James (except he did not state how many stitches were made).

The Hill brothers and defendant had been friends for several years.

Defendant testified that while he and the Hill brothers were in the café he asked James Hill for a loan of $2.00; the loan was made, and defendant said he would pay the money back ''tomorrow''; then Melvin said something to the effect that James would not get his money back; when they went outside the café, James grabbed defendant's hat and said he would keep it for the $2.00; then James hit defendant with his fist and knocked him down; the manager of the café came out and picked defendant up; he (defendant) did not go into a market; later, when defendant was in front of the market, James grabbed him, said that he was going to kill him before the night was over, and then started fighting; the brothers kicked and beat him; he (defendant) did not use a knife in the fight, nor see a knife or see anyone get cut.

On cross-examination, defendant said that on the night of April 29 (the next night) he went down (to the police station) and gave himself up because he heard the police were looking for him; Officer Hixon was there at that time; and defendant told how it happened. The deputy district attorney asked defendant if at that time he made a certain statement (which alleged statement the deputy then recited or read). The alleged statement was in substance: It started over $2.00. When defendant came out of the café the brothers jumped him and nearly knocked him out. When he asked who hit him this guy (James) said he did, and James stayed there with his hand in his pocket and said he was going to kill defendant. The brothers had killed one of his best friends. When they started to fight, Melvin came over and kicked defendant. The next thing defendant knew he was lying on the ground, and he found the knife lying there,

and he started using it to defend himself and he did not cut anybody.

In answer to the question as to whether he made the statement (above stated in substance), he replied, "No, that's not right. That's not all. I didn't make no statement that they killed my best friend and all of that." The deputy asked him if he told the officer he found the knife lying there. He replied that he did not tell them he found a knife. He also said that he did not have a knife.

In rebuttal, Officer Hixon testified that in the evening of April 29 he had a conversation with defendant in the presence of two other officers and the defendant's sister and another lady. The deputy district attorney read or recited the alleged statement of defendant, hereinabove referred to, and asked the officer if the defendant made the statement. He replied, "Yes."

The evidence was sufficient to support the judgment.

■ Appellant asserts further that the deputy district attorney was guilty of *prejudicial misconduct*. The attempted specification of misconduct is not clear. Presumably, the following comment in appellant's brief is intended as a specification of misconduct: "If a defendant is going to be attacked on the grounds of a previous inconsistent statement he at least ought to have the opportunity to know what the statement was, observe the statement, if he made it, refresh his memory, if he in fact appeared to have been blurred in memory." When defendant was being cross-examined, the deputy asked him whether or not in certain conversation with a police officer at a specified time and place the defendant made a certain statement (the statement hereinabove referred to). No one contended that the defendant wrote the statement or signed it or had seen it. The defendant had testified that he told the officers "how it happened." There was no misconduct.

■ Appellant also asserts that the court abused "its discretion by not making a ruling upon the important point of law regarding impeaching and prejudicial inconsistent admission of the defendant allegedly made at a prior time and place." This assertion is not clear. It seems that appellant is intending to assert that the court should have interrupted a discussion between the attorneys in order to make a ruling as to whether the alleged statement of appellant was an impeaching statement. In his brief (pp. 22 and 23), appellant refers to a portion of the reporter's transcript

showing a discussion between the attorneys regarding impeachment, and appellant states therein, in parentheses, that the court made no statement at that time. It does not appear that the circumstances called for such a ruling. This contention is not sustainable.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.